WILLIAM M. SMITH *et al.*, plaintiffs in error, *vs.* CHARLES R. PATE *et al.*, defendants in error.

1. A B died since the act of 1866, leaving as his heirs-at-law five daughters, all of whom were married, and also leaving a widow. Three of the daughters *and their husbands*, as complainants, filed a bill against another daughter and her husband, seeking to set aside as fraudulent a deed made by the deceased to the defendants during his life, giving to them certain lots of land. The bill did not make the widow or the other daughters parties. The jury found for the complainants, and decreed that the land should be sold, the proceeds be applied to the support of the widow for life, and at her death be distributed among the heirs-at-law of the deceased father:

Smith *et al. vs.* Pate *et al.*

*Held,* that the verdict was illegal.  The husbands of the daughters, the complainants, had no interest in the land, and if the deed was set aside, the rights of the widow and the heirs was fixed by law, and not in issue before the jury.

2. There ought to be a new trial.

Husband and wife.  Equity.  Parties.  Decree.  Before Judge KNIGHT.  Milton Superior Court.  August Term, 1873.

Charles R. Pate and his wife, Emily Pate, Simeon Frazer and his wife, ...... Frazer, and George W. Chambers and his wife, Mary Chambers, filed their bill against William M. Smith and his wife, Eleanor Smith, making substantially the following case:

Complainants, Emily Pate, Mrs. Frazer and Mary Chambers are the daughters and heirs-at-law of Archibald Bradford, deceased.  His widow, Margaret Bradford, and his daughters, Martha Ragsdale and Eleanor Smith, are also heirs-at-law of said deceased, but have refused to be made parties complainants to this bill for some reason unknown to complainants.

Archibald Bradford was eighty-five or ninety years of age, and so imbecile in mind and weak and feeble in body as to be wholly incapacitated from contracting.  Whilst in this condition, in the year 1869, the defendants, pretending great love and affection for the old man, with a view to possessing themselves of all of his property and of defrauding complainants, induced the old man to believe that complainants were his enemies.  Thus operating upon his imbecile mind, and prejudicing him against the complainants, they importuned him to come and live with them under the false promise to take care of and support him.  By the means aforesaid the defendants induced the old man to come and live with them.  Having thus obtained control of him, by the same false and fraudulent pretenses, they induced him to convey to the defendants, for and in consideration of the natural love and affection which he bore to them, and for the sum of $5 00, three lots of land in the county of Milton, which was all the property he then owned.  This deed was executed on March 21st,

1870. Soon thereafter said Bradford became sick, and died in the following June. Complainants were fraudulently kept in ignorance of his critical condition, and were thus deprived of the melancholy satisfaction of waiting upon the old man in his last illness.

Complainants waive discovery from each of the defendants, and pray that the deed aforesaid may be decreed to be delivered up to be canceled; that the land may be equally divided between the heirs-at-law of said Archibald Bradford, deceased, or that it be sold and the proceeds divided; and that the writ of subpœna may issue.

The defendants answered, substantially, as follows:

They positively deny that either by themselves, or through others, they ever persuaded or influenced the said Archibald Bradford to make or execute a deed to them for the said lots of land. They deny using any unfair or fraudulent means to induce said A. Bradford to make the deed. Defendants say that said Bradford, in the exercise of his own judgment, so far as they know or believe, made the proposition to defendant, that on account of his age, poverty and extreme destitution, he had decided to leave his home and go and live with some of his children. Defendants suggested to him and advised him to go and live with Charles Pate, or Simeon Frazer, or J. S. Ragsdale, all of whom were his sons-in-law, and said Bradford assured these defendants that he could not live with either the said Pate, Frazer or Ragsdale. Defendants then told him if it were his wish and desire to live with them, they would do the best they could for him, but leaving it at all times to his own free will. He came to their house to live some time about 25th December, 1869, and of his own free will proposed to make them a deed to his land, in consideration that defendants would support and maintain said Bradford and his wife for their natural lives, and satisfy an execution against said Bradford for $100 00, with seven years' interest thereon. They told said Bradford they would accept his proposition. On the 21st day of March, 1870, said Bradford did execute and deliver to these defendants his deed for

said tract of land. They did not influence him in anywise to come and live with them, or to make the deed. He was in the possession of his mental faculties and good judgment, both at the time he executed the deed to these defendants and at the time of his death. Defendants took good care of the old man and his wife until his death, and have since taken care of the old lady, who is now blind and helpless. They intend to do so, so long as she may live. These defendants having fully answered, pray to be relieved, etc.

The jury returned the following verdict: "We, the jury, find and decree that the deed from Archibald Bradford to William Smith and Eleanor Smith, to lots of land numbers nine hundred and ninety-four, nine hundred and ninety-five, and one thousand and twenty-four, in the second district and second section of said county, mentioned in said bill, be delivered up, canceled, set aside and annulled, and then said land be sold and a reasonable support be furnished to Margaret Bradford, widow of the deceased, out of the proceeds of said sale (or out of the rent of the same) during her lifetime, and at her death the remainder of the proceeds of the sale and the rent of said land, be equally divided between the legal distributees of Archibald Bradford, after the payment of $100 00, principal, with interest, due by Archibald Bradford to William Smith."

A motion for a new trial was made upon the ground, amongst others, that the aforesaid decretal verdict was contrary to law and equity. The motion was overruled, and the defendants excepted.

IRWIN, ANDERSON & IRWIN, for plaintiffs in error.

No appearance for defendants.

McCAY, Judge.

1. We should hesitate to interfere with this verdict on the ground that there is no evidence to justify setting aside the deed. It may be there is strong evidence in favor of its integrity, but there is certainly some evidence to show that it

was unduly obtained. But we think the verdict as it stands is illegal. Under the act of 1866 the husbands of these ladies had no interest in this land, and a verdict for the complainants generally is a verdict in favor of the husbands and wives jointly. Again, if the deed be set aside the land belongs to the estate of the old gentleman. It is to be administered on, or go to the heirs-at-law according to the circumstances. The rights of the widow are fixed by law. She takes a child's part or her dower, at her option. What was there in the evidence or the case to justify the application of the proceeds to the widow during her life? She was no party to the proceedings and may not desire to have her rights so disposed of. The same may be' said of the other daughters who were not parties to the bill, as well as of Mrs. Smith. There was no prayer in the bill, or any call in the proof for this administration and division of the land, nor were there proper parties before the court to justify it.

2. The jury seem to have set aside the deed under an impression that they could give a better course to the title to these lands than either the deed or the law, and this may be true in this case, but it is not permitted by law. The verdict should have been for the deed or against it, leaving the widow as well as the others to their rights. We are not satisfied that the jury would have set aside the deed except on the terms stated, and we think there ought to be a new trial.

Judgment reversed.